# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SOLOMON MARCELLUS MILLER, <br>     Plaintiff, <br><br> v. <br><br> ANALYST TODD BURT, *et al.*, <br>     Defendants. | : <br> : <br> : <br> :     CIVIL ACTION NO. 18-CV-3044 <br> : <br> : <br> : |

## **MEMORANDUM**

**PRATTER, J.**                                                                                                   **AUGUST 24 , 2018**

On July 20, 2018, *pro se* Plaintiff Solomon Marcellus Miller filed this civil action against "Todd Burt of Reliance First Capatil," Rob Mahallati, Bank of America, and M&T Bank, raising claims regarding his mortgage contract. He also filed a Motion for Leave to Proceed *In Forma Pauperis*. (ECF No. 1.) By Memorandum and Order entered on July 25, 2018, the Court granted Mr. Miller leave to proceed *in forma pauperis* and dismissed his Complaint with leave to amend. (ECF Nos. 4, 5.) The Court received Mr. Miller's Amended Complaint against "Broker Rob & analyst Manda Mahallati of Philadelphiahouse.com," "Analyst Tod Burt of Reliance First Capital LLC," Bank of America, and M&T Bank on August 9, 2018. (ECF No. 7.) For the following reasons, the Court will dismiss the Amended Complaint.

## I.    FACTS ALLEGED BY PLAINTIFF

Mr. Miller "was interested in purchasing a house, so he subsequently contacted a real estate company called philadelphiahouse.com." (Am. Compl. at 3.)[1] In October 2010, he reached out to "broker Rob & Analyst Mandy Mahallati and staff." (*Id.*) In December of 2010, Mr. Miller "started a fast pace[d] process with Rob & Mandy Mahallati." (*Id.*) On January 12,

---

[1] The Court uses the pagination assigned to the Amended Complaint by the CM/ECF docketing system.

2011, Mandy Mahallati "connected Mr. Miller with a company called Reliance First [Capital]." (*Id.*) Mr. Miller was then put in contact with Todd Burt because Mr. Burt was the underwriter for Mr. Miller's mortgage loan. (*Id.*) Mandy Mahallati "got the approval with Bank [o]f America for the loan." (*Id.*)

Mr. Miller states that he "diligently looked through all his documents and emails to try to obtain the actual names, numbers and connections with [B]ank of [A]merica but unfortunately [was] not able to connect an actual name, in connection with [B]ank of [A]merica during that time." (*Id.*) Mr. Miller made regular mortgage payments to Bank of America from 2011-2013. (*Id.*) In February of 2013, the mortgage was assigned to M&T Bank "without [Mr. Miller's] knowledge. (*Id.*) Mr. Miller found out when he went to Bank of America to "pay on the mortgage and one of the bank representatives at [B]ank of [A]merica informed him that [h]is [mortgage] is no longer service[d by Bank of America], but to pay at another bank called M&T Bank." (*Id.*) This is how Mr. Miller learned "who is now servi[c]ing this FRAUDULENT bank loan." (*Id.*) A few days after that, Mr. Miller "receive[d] a welcoming package from M&T Bank." (*Id.*)

Mr. Miller contends that this "mortgage deal was a scam" because the mortgage contract was not notarized and because the lender was not listed on the contract. (*Id.* at 7.) He also argues that the "truth and lending statement does not have any signatures on it at all" and that he was the only party to sign the mortgage contract. (*Id.*) Mr. Miller argues that the Mahallatis "never disclosed to [him] that after 9 months of living in the property his contract was a security agreement by law." (*Id.*) He further argues that he financed the "whole housing transaction himself," that the federal government "is obligated to pay all citizen debt," and that "gold [and] silver is the only real currency that can payoff a debt." (*Id.*) Mr. Miller also asserts that the deed

and title were not recorded together and that the Defendants failed to disclose "all of [his] legal rights pursuant to his mortgage contract." (*Id.* at 25.) He faults the Defendants for not informing him of the existence of certain laws, including the Truth in Lending Act ("TILA"), prior to closing. (*Id.*)

Mr. Miller has attached several documents to his Amended Complaint, including a letter from M&T Bank, dated August 3, 2018, indicating that Mr. Miller was in default and stating an intention to initiate foreclosure proceedings; a copy of what appears to be the deed to Mr. Miller's home; a "Settlement Services Provider List;" copies of emails; a copy of the mortgage contract; and a Servicing Disclosure Statement. Mr. Miller again suggests that the Defendants violated his rights under the TILA, as well as the "home equity loan consumer protection Act, also the home ownership and equity protection Act." (*Id.* at 25.) He also asserts claims pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"); the Emergency Banking Act of 1933; and 18 U.S.C. §§ 241, 1341, and 1343. (*Id.* at 8, 10-12.) Mr. Miller claims that the Defendants are also liable for "intentional infliction of emotional distress" and asserts that their actions have caused him to experience health and financial issues. (*Id.* at 13.) It is not clear what relief Mr. Miller is seeking, as he has written "NA" (this is used to signify "not applicable") in that section of the form complaint. (*Id.* at 13.)

## II. STANDARD OF REVIEW

Because the Court previously granted Mr. Miller leave to proceed *in forma pauperis*, 28 U.S.C. § 191 (e)(2)(B)(ii) requires that the Court dismiss the Amended Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the

3

Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory statements and naked assertions will not suffice. *Id.* The Court may also dismiss claims based on an affirmative defense if the affirmative defense is obvious from the face of the complaint. *See Ray v. Kertes*, 285 F.3d 287, 297 (3d Cir. 2002); *see also McPherson v. United States*, 392 F. App'x 938, 943 (3d Cir. 2010). Because Mr. Miller is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

### A. Claims Under Criminal Statutes

As noted above, Mr. Miller appears to raise claims under various criminal statutes, including 18 U.S.C. §§ 242, 1341, and 1343. Criminal statutes, however, do not provide a basis for civil liability. *See Cent. Bank of Dover, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994) ("We have been quite reluctant to infer a private right of action from a criminal prohibition alone[.]"); *see also Schrager v. Aldana*, 542 F. App'x 101, 103 (3d Cir. 2013) (per curiam) (noting that there is no private cause of action for write fraud under 18 U.S.C. § 1341); *Carpenter v. Ashby*, 351 F. App'x 684, 688 (3d Cir. 2009) (per curiam) (noting that § 242 does not create a civil cause of action); *Patel v. Smith*, No. 10-4165, 2011 WL 2746080, at *4 (E.D. Pa. July 12, 2011) ("District courts in this circuit have not recognized an implied private right of action for violations of 18 U.S.C. § 1343 . . . and neither have the other circuits that have confronted the issue."). Accordingly, any claims sought to be brought pursuant to criminal statutes will be dismissed.

4

## B. Claims Under the Emergency Banking Act of 1933

Mr. Miller suggests that the Defendants have violated the Emergency Banking Act of 1933, which he asserts obligated the federal government "to pay all citizen debt" and under which "citizens can legally have their debts discharged." (Compl. at 7.) The Emergency Banking Act was one of several acts passed that "moved the United States off the gold standard in 1933." *United States v. Rivera*, No. CIV 14-0579 JB/CG, 2015 WL 4042197, at *6 n.3 (D.N.M. June 30, 2015). Mr. Miller does not describe, and the Court cannot discern, how the Defendants have violated this Act. Accordingly, any claims supposedly brought pursuant to the Emergency Banking Act of 1933 will be dismissed.

## C. RICO Claims

As he did in his initial Complaint, Mr. Miller asserts that the Defendants' actions have violated RICO by committing mail and wire fraud. The federal civil RICO statute provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter[, which prohibits racketeering activity,] may sue therefor in any appropriate United States district court . . . ." 18 U.S.C. § 1964(c). Section 1962 provides, in relevant part:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . (d) it shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. § 1962.

To state a civil RICO claim, a plaintiff must plausibly allege the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). The RICO statute defines "racketeering activity" by

5

enumerating a list of predicate acts, including mail and wire fraud. *See* 18 U.S.C. § 1961(1). "Where acts of mail and wire fraud constitute the alleged predicate racketeering acts, those acts are subject to the heightened pleading requirement of Rule 9(b)" of the Federal Rules of Civil Procedure. *Warden v. McLelland*, 288 F.3d 105, 114 (3d Cir. 2002). Thus, "allegations of [RICO] predicate mail and wire fraud acts should state the contents of the communications, who was involved, where and when they took place, and explain why they were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993). A "pattern" of racketeering activity requires at least two predicate acts of such activity. *See* 18 U.S.C. § 1961(5).

Here, Mr. Miller's Amended Complaint fails to adequately plead a pattern of racketeering acts. He vaguely suggests that "a lot of times it is fraud involved with the transaction of the property through the contract. Prime example the 2008 housing bubble." (Am. Compl. at 8.) He also states that the Defendants "sent unsigned documents through the mail." (*Id.* at 25.) Essentially, Mr. Miller faults the Defendants for using mail as a means of communications. His vague and conclusory statements, however, are wholly insufficient to state a valid civil RICO claim. *See Jung v. Bank of Am., N.A.*, No. 3:16-CV-00704, 2016 WL 5929273, at *10 (M.D. Pa. Aug. 2, 2016), *Report and Recommendation adopted by* 2016 WL 5928805 (M.D. Pa. Oct. 11, 2016) (allegations that "unspecified Defendants utilized mail as a general means of communication" were insufficient to state a RICO claim). Accordingly, his RICO claims will also be dismissed.[2]

### D. TILA Claims

---

[2] Moreover, as previously noted, Mr. Miller's mental and emotional distress are not injuries to "business or property" for purposes of RICO. *Clark v. Conahan*, 737 F. Supp. 2d 239, 255 (M.D. Pa. 2010) (observing that "[m]ental distress, emotional distress, and harmed reputations do not constitute injury to business or property sufficient to confer standing on a RICO plaintiff" and explaining that "injury for RICO purposes requires proof of concrete financial loss, not mere injury to an intangible property interest").

6

Mr. Miller contends that the Defendants violated the TILA by "fail[ing] to disclose detailed information concerning [his] mortgage contract at the time of closing." (Am. Compl. at 25.) He suggests that the Defendants failed to disclose the existence of the TILA, the Home Equity Loan Consumer Protection Act, and the Home Ownership and Equity Protection Act to him. (*Id.*) Miller closed on his mortgage in 2011. (Am. Compl. at 3.) His mortgage was assigned to M&T Bank in 2013. (*Id.*)

The TILA "requires lenders to make certain disclosures to borrowers and gives borrowers a civil cause of action against creditors who violate these disclosures." *Ramadan v. Chase Manhattan Corp.*, 156 F.3d 499, 500 (3d Cir. 1998). Claims under the TILA must be brought within one (1) to three (3) years of the alleged violation. *See* 15 U.S.C. § 1640(e). In its July 25, 2018 Memorandum, the Court noted that Mr. Miller's TILA claims appeared be time-barred, but gave him leave to amend "in the event that he [could] assert plausible allegations of fraudulent concealment" that would serve to toll the statute of limitations. (ECF No. 4 at 3-4.) However, the Amended Complaint fails to set forth such plausible allegations. Nowhere in the Amended Complaint does Mr. Miller suggest that (1) the Defendants actively misled him regarding his cause of action, (2) Miller was prevented "in some extraordinary way" from asserting his rights, and (3) he did not timely assert his rights in the wrong forum. *See Williams v. EMC Mortg. Corp.*, No. 12-1215, 2013 WL 1874952, at *4 (E.D. Pa. May 3, 2013) (noting that "equitable tolling may be appropriate: (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights); or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum"). Moreover, nothing in the Amended Complaint suggests that Mr. Miller "'exercised reasonable diligence in investigating and bringing [his]

7

claims.'" *Id.* (quoting *New Castle Cty. v. Hallburton NUS Corp.*, 111 F.3d 1116, 1126 (3d Cir. 1997)). Likewise, Mr. Miller's lack of knowledge about the TILA does not justify tolling. *See Palmer v. City of Harrisburg, PA*, No. 1:CV-06-1973, 2007 WL 3342792, at *4 (M.D. Pa. Nov. 8, 2007) ("While it may be true that Plaintiff lacked the knowledge that he could file a civil complaint during the statute of limitations period, his lack of knowledge is irrelevant."), *aff'd*, 276 F. App'x 105 (3d Cir. 2008) (per curiam); *cf. Ross v. Varano*, 712 F.3d 784, 799–800 (3d Cir. 2013) ("The fact that a petitioner is proceeding pro se does not insulate him from the 'reasonable diligence' inquiry and his lack of legal knowledge or legal training does not alone justify equitable tolling."). Accordingly, Mr. Miller's TILA claims will be dismissed as time-barred.[3]

### E.  State Law Claims

Finally, Mr. Miller raises a state law claim for intentional infliction of emotional distress against the Defendants. However, because the Court is dismissing all of Mr. Miller's federal claims, the Court declines to exercise supplemental jurisdiction over this claim. *See* 28 U.S.C. § 1367(c)(3) (stating that "district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . [it] has dismissed all claims over which it has original jurisdiction"); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (holding that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well"); *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (noting that "[w]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial

---

[3] Mr. Miller's claims under the Home Equity Loan Consumer Protection Act and the Home Ownership and Equity Protection Act are also time-barred. Both of these Acts amended the TILA and therefore are "governed by the same remedial scheme and statute of limitations." *Harris v. EMC Mortg. Corp.*, No. 01-4868, 2002 WL 32348324, at *2 (E.D. Pa. Apr. 10, 2002).

economy, convenience, and fairness to the parties provide an affirmative justification for doing so"). Here, there is no reason to retain jurisdiction over Mr. Miller's state law claim. Thus, Mr. Miller's state law claim will be dismissed without prejudice to his right to raise them in state court.[4]

## IV. CONCLUSION

The Court acknowledges that Mr. Miller is upset about the situation he describes. However, his Amended Complaint fails to state a plausible claim for relief in federal court. Accordingly, the Court will dismiss the Amended Complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Mr. Miller's federal claims will be dismissed with prejudice. Any state law claims, including his intentional infliction of emotional distress claim, will be dismissed without prejudice to his right to raise them in state court. Mr. Miller will not be permitted to file a second amended complaint because amendment would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002). An appropriate Order follows.

BY THE COURT:

For

_____
**GENE E.K. PRATTER, J.**

---

[4] The Court takes no position with respect to the merits or timeliness of any state law claims that Mr. Miller may endeavor to raise.

9